Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Charlene Cheli*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| CHARLENE CHELI, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>PAAL REALTY LLC, a New Jersey Limited Liability Company<br><br>Defendant. | Case No. 1:24-cv-08891<br><br>**COMPLAINT** |

## Introduction

Plaintiff, CHARLENE CHELI, an individual, on her own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, PAAL REALTY LLC, a New Jersey Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1.  Plaintiff, CHARLENE CHELI, is an individual over eighteen years of age and is otherwise sui juris. Ms. Cheli resides at 1380 Washington Ave, Vineland, NJ 08361.

1

2. Defendant, PAAL REALTY LLC, owns and/or operates a place of public accommodation, in this instance a shopping center/plaza, alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

3. Defendant's property is a shopping center/plaza with several tenant spaces – known as Matthews Plaza – located at 344 Delsea Drive, Vineland, NJ 08328 Gloucester County[1] (the "Property" or "Matthews Plaza").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[2]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[3]

8. Plaintiff, CHARLENE CHELI, is an individual with disabilities - as defined by and pursuant to the ADA. Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life

---

[1] Property is also known as Block 5101, Lot 26.01 on the Municipal Tax Map of Franklin Township
[2] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[3] 28 CFR § 36.201(a) and 28 CFR § 36.104

activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires, at all times, the use of a wheelchair to ambulate.

**Factual Background**

9.     Ms. Cheli is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of her wheelchair to ambulate) she has dedicated her life to the elimination of accessibility discrimination so that she, and others like her, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10.     Ms. Cheli encounters architectural barriers at many of the places that she visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs.

11.     The barriers to access that Ms. Cheli experiences at differing places of public accommodation are often similar in nature. For example, she is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. She has become frustrated and disheartened by the repetitiveness of the complaints she has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, she now finds her redress through the ADA; as Congress intended.

12.     Ms. Cheli has visited the Property – and the tenant spaces – on several occasions, her last visit as a patron of the occurred on or about June 26, 2024. Ms. Cheli visited the Property as a

---

[4] as defined by 28 CFR § 36.105(b)(1-2)

3

bone fide patron with the intent to avail herself of the goods and services offered to the public within but found that the Property was littered with violations of the ADA, both in architecture and policy.

13. Ms. Cheli shall return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance - she sincerely hopes that her return visits are not made in vain.

14. The Property is located approximately nine (9) miles from Ms. Cheli's home. She frequently travels to and through the Malaga area by way of Delsea Drive and Route 40.

15. Further, Ms. Cheli has accumulated friends and family across the mid-Atlantic region. Now that she has retired, she has plenty of time to travel and regularly visit them across New Jersey, New York, Pennsylvania, Delaware, and Maryland. This includes regularly travelling throughout southern New Jersey.

16. Ms. Cheli has personally encountered and physically experienced exposure to architectural barriers and otherwise harmful conditions that have endangered her safety, caused her inconvenience, and forced her to suffer dignitary harm at the Property.

17. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Ms. Cheli has actual notice and reasonable grounds to believe that she will continue to be subjected to discrimination by the Defendant.

18. Ms. Cheli has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers she has personally experienced which are listed in Paragraph 23 of this complaint.

19. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes

the remedial work that is required to cure existing violations, under the appropriate standard and in compliance with the ADA. Such a reinspection would be undertaken as set forth in any settlement agreement that may occur or as ordered by this Court.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

20. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

21. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

22. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 23 are both technically feasible and readily achievable.

23. The following are architectural barriers and violations of the ADA that Ms. Cheli has personally encountered during her visits to the Property:

**Parking and Exterior Accessible Route**

   a. The designated accessible parking spaces located at Matthews Plaza are not located on the most direct accessible route to the facility, are not maintained, contain surface cracking, excessive sloping, faded striping, and abrupt changes of level; all in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. These barriers have presented Ms. Cheli with a tipping hazard and could also cause damage to her wheelchair;

to avoid these obstacles she has been forced to park away from the facility in a flat, maintained area, travel around obstacles, and then through the vehicular area of the parking lot in order to reach the facility.

b. The accessible route which leads from the accessible parking area to the tenant entrances is impeded by cross-sloping and abrupt changes of level; a violation of the ADAAG and Section 402 and 502 of the 2010 ADA Standards. These conditions have presented Ms. Cheli with a tipping hazard which could cause a fall and damage to her wheelchair.

c. The exterior accessible route throughout the Property is impeded by excessive cross-sloping and abrupt changes in level; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Ms. Cheli has been impeded by the excessive sloping and abrupt changes of level while traveling through the Property – these conditions present a tipping hazard and could damage her wheelchair.

d. The Property fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Ms. Cheli has been forced to park away from the shopping center as detailed above so that she could freely access her vehicle.

e. Matthews Plaza fails to provide a continuous accessible route throughout the entirety of the shopping center; the existing route contains excessive cross-sloping and abrupt changes of level. These architectural barriers are violative of the ADAAG and Section 402 of the 2010 ADA Standards. Due to these barriers Ms. Cheli is unable to traverse from one section of the shopping center to another.

f. The Property fails to provide a compliant route to the adjacent street, sidewalk, and/or the

public transportation route. Ms. Cheli has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits her options for transportation and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Payment counters throughout the Property are mounted beyond Ms. Cheli's reach; a violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. These barriers have prevented her from freely accessing these elements within the shopping center.

h. Ms. Cheli cannot access the tenant space entrances without assistance due to abrupt changes of level, and excessive sloping at the base of the doors which could damage her wheelchair and/or cause a tip and fall; a violation of the ADAAG and Sections 404 of the 2010 ADA Standards.

**Restrooms**

i. The restrooms within tenant spaces – Bliss Salon and Hope Nails and Spa – are inaccessible to Ms. Cheli (and all mobility impaired persons). The barriers to access include incorrect signage, inaccessible water closets, and a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers (and others) have prevented Ms. Cheli from freely using the restrooms.

j. Restrooms within aforementioned tenant spaces contain dispensers which are improperly mounted beyond Ms. Cheli's reach; in violation of the ADAAG and Section 308 of the 2010 Standards. Due to their improper locations Ms. Cheli could not make use of the dispensers in the restrooms.

k.  Restrooms within aforementioned tenant spaces contain improper centerlines for the toilets and lack the proper grab bars; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to these barriers Ms. Cheli could not make use of the restrooms.

l.  Restrooms within aforementioned tenant spaces contain lavatories that lack the requisite knee and toe clearance; in violation of the ADAAG and Section 606 of the 2010 ADA Standards. Due to these barriers and the overall inaccessibility of the restrooms Ms. Cheli could not wash her hands nor make use of the sinks.

m.  The doors which are used to access the restrooms within aforementioned tenant spaces are impeded by improper signage and a lack of maneuvering clearance. Due to the lack of access Ms. Cheli could not enter/exit the restrooms without assistance.

24. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

25. The discriminatory violations described in Paragraph 23 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection conducted by the Plaintiff (and her expert) and include all those personally experienced by Ms.

---

[5] 28 CFR § 36.104

Cheli. Plaintiff requires thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA/LAD.

26. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

27. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

28. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

29. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

30. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

---

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)
[7] 42 U.S.C. § 12181(b)(2)(A)(ii)
[8] 42 U.S.C. § 12181(b)(2)(A)(iii)

31. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

32. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Cheli, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

33. Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

34. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15,

---

[9] as defined by 28 CFR § 36.401(a)(2)
[10] 28 CFR § 36.402(a)(2)

2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

    c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

35. Plaintiff is not required to notify the Defendant of its violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In her experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

36. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

37. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

38. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the ADA.[11]

**WHEREFORE,** Plaintiff respectfully demands;

---

[11] 42 U.S.C. § 12188(b)(2)

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
### Violation of New Jersey Law
### Against Discrimination, N.J.S.A. 10:5-1 et seq.

39. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

40. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

41. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation

without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[12]

42. As set forth above, the Defendant has violated the LAD by denying Ms. Cheli, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

43. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Ms. Cheli has sustained bodily injury in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

---

[12] Pursuant to N.J.S.A 10:5-4

Respectfully submitted on this 30th day of August 2024,

> */s/ Jon G. Shadinger Jr.*
> Jon G. Shadinger Jr., Esq.
> Shadinger Law, LLC
> 717 E. Elmer Street, Suite 7
> Vineland, NJ 08360
> (609) 319-5399
> js@shadingerlaw.com
> *Attorney for Plaintiff, Charlene Cheli*